UNITED STATES of America,
Plaintiff,

v.

AMERICAN SOCIETY OF COMPOSERS,
AUTHORS AND PUBLISHERS
et al., Defendants.

Application of SHENANDOAH VALLEY
BROADCASTING, INC., et al.,
Petitioners.

for the Determination of Reasonable
License Fees,

United States District Court
S. D. New York.

Dec. 28, 1961.

See also 202 F.Supp. 340.

Donovan, Leisure, Newton & Irvine, New York City, for Shenandoah Valley Broadcasting, Inc.

Herman Finkelstein, New York City, for American Soc. of Composers, Authors and Publishers and others.

RYAN, Chief Judge.

A petition has been filed under the provisions of the amended final judgment by 300 T.V. Broadcasting stations, praying that ASCAP be directed to grant them a blanket and per program license giving to each and every petitioner performance rights from January 1, 1962 through December 31, 1966, excepting, however, network programs and prerecorded material produced by persons other than petitioners, and asking fixation of reasonable interim and final license fees.

Simultaneously, petitioners have applied for interim and temporary relief pending the hearing on and determination of their petition and have moved to restrain and enjoin ASCAP and its members from refusing to exercise authorizations it has received from its members to issue to petitioners licenses and from otherwise interfering with or restricting the granting of such licenses. More specifically, petitioners seek as interim injunctive relief to set aside a resolution of ASCAP's Board of Directors providing that the authorizations received by ASCAP be held in escrow until like au-

thorizations are executed and delivered by a total of at least 80% of the membership.

It appears quite undisputed that the requirement that 80% of the membership deposit authorization with ASCAP before any television performance licenses will issue has been in effect since 1948, when television rights were for the first time licensed on a fee basis; and that the parties to this proceeding have been operating under television performance licenses issued under this procedure for the last four years. A major problem now presented in negotiations for a renewal of the existing licenses arises from the fact that petitioners now seek a type of license on an interim and final basis quite different from that which they have had in the past; that is, they seek and have asked for a blanket license limited only to the television programs which each station originates locally and excluding those programs filmed or taped by third party producers. As to these latter programs, petitioners seek no license but would have each ASCAP member individually and directly license the producer to permit broadcasts by the petitioners. This exclusion, it appears, would ultimately embrace a substantial number of programs; and such a license the ASCAP members appear to be unwilling to grant.

■ However, since the filing of this application by the petitioners, ASCAP's members have deposited the necessary 80% of the performance rights, thus authorizing ASCAP to negotiate a renewal license. What the terms of that renewal license should be is a matter which must await judicial decision rendered only after a full hearing, and this does not lie within the interim injunctive relief sought. ASCAP now has full authority to act for its members with respect to this license now sought.

The status quo should be maintained pending a final determination after hearing on the type and extent of license and the reasonable fee. The widespread effect these licenses have on television broadcasting indicates that it is most desirable to retain stability. No irreparable harm is threatened petitioners, for ASCAP is financially responsible and the ultimate determination will be retroactive in effect to January 1, 1962.

■ The present license is to continue and under the existing terms and conditions; there is no need for a separate hearing on interim fees. An order has been made providing for the interim fees until final determination of all questions raised by the petition.